UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAHUM AVENDANO-RUIZ,<br><br>   Plaintiff,<br><br>   v.<br><br>CITY OF SEBASTOPOL, et al.,<br><br>   Defendants. | Case No. 15-cv-03371-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I.     INTRODUCTION

Early on a Sunday morning in August 2014, Sebastopol Police ("SPD") Officer Charles Wong stopped plaintiff Nahum Avendano-Ruiz for a traffic violation. Avendano-Ruiz legally parked his car on a main thoroughfare in a spot usually limited to two-hour use except on Sundays, when the spot is available all day. When Wong discovered that Avendano-Ruiz did not have a valid license and had previously been convicted of driving without a valid license, he arranged for a towing company to move Avendano-Ruiz's car and to impound it for thirty days pursuant to California Vehicle Code § 14602.6. Avendano-Ruiz twice suggested the tow was unnecessary because he had friends with valid licenses who could drive the car away. Wong refused this request. At the tow hearing, Avendano-Ruiz attempted to retrieve his car before the thirty-day period expired, but the SPD and Chief Police Officer Jeremy Weaver denied this request.

Now, Avendano-Ruiz advances claims pursuant to 28 U.S.C. § 1983 against the City of

Sebastopol, SPD, and Officer Weaver in his individual and official capacities for violations of the Fourth Amendment.  He contends the initial seizure and subsequent decision to impound the car for thirty days were unreasonable because they were warrantless.  Defendants move for summary judgment, arguing these seizures did not require a warrant because they were authorized by state statute, valid "administrative penalties," proper exercises of their community caretaking duties, and reasonable all in all.  They have failed to show that the undisputed facts establish their actions comport with the Fourth Amendment's reasonableness requirement as a matter of law, and therefore summary judgment must be denied.  Even though Avendano-Ruiz may be able to show the initial seizure and thirty-day impoundment of his car were unreasonable, whether the impoundment was unconstitutional was debatable at the time of the seizure.  Accordingly, qualified immunity shields Weaver in his individual capacity from standing trial for these violations.

## II.   BACKGROUND

Just before 2:00 a.m. on a Sunday morning in August 2014, Officer Wong witnessed Avendano-Ruiz driving his Chrysler in downtown Sebastopol.  Avenadano-Ruiz's car drifted over the lane marker dividing the two westbound lanes on Bodega Avenue before swerving back into the original lane.  Wong activated his lights, and Avendano-Ruiz pulled over to the side of Bodega Avenue reserved for parking.  Wong Decl. ¶ 2; Avendano-Ruiz Decl. Exs. 1-3 (photographs of the parking signs).  The parking spot Avendano-Ruiz pulled into is available for two-hour parking from 7:00 a.m. until 6 p.m., Monday through Saturday.  *See* Roman Decl. Exs. 1-3.  Parking is unlimited on Sunday.  *Id.*

Once the car was pulled over to the side of the road, Wong approached and asked the driver and passenger to produce identification.  Both men handed the officer Matricula Cards issued by the Mexican Consulate.  Wong Decl. ¶ 3.  Wong asked whether Avendano-Ruiz had a driver's license issued by any state or foreign jurisdiction.  *Id.*  Avendano-Ruiz admitted he did not.  *Id.*  To follow up, Wong contacted dispatch to confirm the status of Avendano-Ruiz's license and to ascertain whether he had been convicted of driving without a valid license before.  *Id.*  The

dispatcher notified Wong that Avendano-Ruiz had been convicted of driving without a valid license in violation of California Vehicle Code § 12500. Based on that information, Wong informed Avendano-Ruiz that he planned to have the car towed pursuant to California Vehicle Code § 14206.6[1] consistent with SPD's policy to use the towing provision of the code when a driver had a prior § 12500 conviction. Wong Decl. ¶ 3.

Avendano-Ruiz suggested towing was not necessary; he twice told Wong that he could call a friend to retrieve the car. The friend lived two blocks away and had a valid California driver's license.[2] Wong rejected this proposal and said, "That's not how this works." Cook Decl. Ex. F, Wong Dep. at 68:11-17. Wong made arrangements to have Avendano-Ruiz's car towed and stored according to the SPD "30 Day Storage Program." Cook Decl. Ex. D. This program requires that a vehicle be towed if a driver "[n]ever had a license and [was] previously cited" for driving without a valid license. *Id.* at 10; *see also* Ex. E, Weaver Dep. at 64:1-8 (stating Wong towed Avendano-Ruiz's car pursuant to "[t]he authority granted under [§] 14602.6(a) and being in compliance with [SPD] department policy that he determined that he was unlicensed, never had been, and had a prior."); Weaver Decl. ¶ 4 ("As of August 2014, . . . the SPD enforced Section 14602.6 only against those individuals (1) who had never been licensed at any time in any jurisdiction and (2) who had previously been convicted of violating Section 12500.").

When peace officers seize vehicles pursuant to section 14602.6(a), they must provide the vehicle owner with an "opportunity for a storage hearing to determine the validity of, or consider any mitigating circumstances attendant to, the storage." Avendano-Ruiz requested such a hearing, which took place the day after the car was towed. Ginn Decl. ¶ 2. In preparation for the hearing,

---

[1] Section 14602.2(a)(1) permits peace officers to arrest immediately and to "cause the removal and seizure of [the] vehicle" if they discover the driver "was driving a vehicle without ever having been issued a driver's license." The statute further provides, "A vehicle so impounded shall be impounded for 30 days." *Id.*

[2] Avendano-Ruiz's friend, Javier Olivares, submitted a declaration explaining he was available to pick up the car on August 10, 2014, and could have arrived within ten to fifteen minutes. Olivares Decl. ¶¶ 3-5.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 15-cv-03371-RS
3

SPD Officer Ginn reviewed Avendano-Ruiz's arrest and driving records and discovered the following traffic violations: (1) a 2005 conviction for driving without a valid license or insurance; (2) a 2008 conviction for driving without a valid license or insurance; and (3) a 2008 citation for running a red light. *Id.*; *see also id.* Ex A. At the hearing, Ginn explained SPD would not release Avendano-Ruiz's car before the thirty-day period expired because he did not have a valid license. Cook Decl. Ex. H, Tow Hr'g Tr. at 62.

Avendano-Ruiz appealed Ginn's determination to Chief Weaver. In response to the appeal, Weaver conducted further investigation and discovered that Avendano-Ruiz's vehicle had been impounded for thirty days after his previous citations for driving without a license. Weaver Decl. ¶ 5. In addition, the Santa Rosa Police Department informed him that the 2005 conviction for driving without a license arose from a car accident caused by Avendano-Ruiz. *Id.* Ultimately, Weaver denied Avendano-Ruiz's request for early release of the vehicle over his protestations that the prolonged seizure violated the Fourth Amendment. Weaver Decl. ¶ 6.

After the thirty-day period had passed, Avendano-Ruiz received a release from SPD. Avendano-Ruiz Decl. ¶ 6. Before taking possession of the car, he had to pay a $75.00 release fee and the costs of towing and storage—$2,060.00. *Id.* Avendano-Ruiz's friend, who has a valid California driver's license, drove the car from the SPD storage yard. *Id.*

In July 2015, Avendano-Ruiz filed claims on behalf of a class of similarly situated people against the City of Sebastopol, the SPD, and Chief Weaver in his personal and official capacity, asserting two claims for relief pursuant to 28 U.S.C. § 1983 and California Civil Code § 52.1. First, he contends defendants violated the Fourth and Fourteenth Amendments of the U.S. Constitution and Article I, section 13 of the California Constitution when they towed his vehicle from Bodega Avenue without a warrant. Second, Avendano-Ruiz contends the thirty-day impoundment of his vehicle without a warrant was also an unreasonable seizure in violation of the U.S. and California constitutions.[3] Defendants move for summary judgment, contending both the

---

[3] The Second Amended Class Complaint also includes a third claim for relief for substantive due process violations, which has been dismissed without leave to amend.

initial seizure of the car and thirty-day impoundment were reasonable as a matter of law. In addition, Weaver invokes the protection of qualified immunity.[4]

### III. LEGAL STANDARD

A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party who seeks summary judgment bears the initial responsibility of identifying an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this initial burden, the non-moving party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. "Only disputes over facts that might affect the outcome of the suit under governing law" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists if the non-moving party presents evidence from which a reasonable fact-finder, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Id.* at 248-49.

### IV. DISCUSSION[5]

The Fourth Amendment prohibits unreasonable searches and seizures. The Supreme Court "has repeatedly held that searches conducted outside the judicial process, without prior approval by a judge or a magistrate judge, are *per se* unreasonable subject only to a few specifically established and well-delineated exceptions." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015) (internal quotation marks and alteration omitted, emphasis in original). "The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment," and therefore the

---

[4] In his opposition brief, Avendano-Ruiz asserted he, too, was seeking summary judgment. Local Rule 7-2 requires parties to notice all motions in writing. Avendano-Ruiz did not follow this procedure, and therefore the only motion under consideration is defendants' motion for summary judgment.

[5] Although Avendano-Ruiz's first and second claims for relief arise from alleged violations of the federal and state constitutions, neither he nor defendants address California law in this motion for summary judgment. Accordingly, this order is limited to the federal claims for relief.

burden is on the government to demonstrate that a warrantless seizure falls under one of the "few specifically established exceptions to the warrant requirement." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) (internal quotation marks omitted).

Defendants insist exceptions exist to justify the warrantless seizure of Avendano-Ruiz's car. First, they contend section 14602.6 is an "administrative penalty" needed to prevent unlicensed drivers from operating vehicles and to protect the public from harm caused by unlicensed drivers, and therefore always reasonable. Second, they argue Wong and the SPD had authority to remove the car from the street under the community caretaker exception to the Fourth Amendment's warrant requirement. Third, they insist that the decision to impound Avendano-Ruiz's car for thirty days was reasonably related to their interest in promoting public safety—a concern that outweighs his possessory interest in the car. Finally, they claim the seizure was proper because Wong had probable cause to believe the car was an instrumentality of a crime—driving without having been issued a license.

### A. Administrative Penalties

Neither the Supreme Court nor the Ninth Circuit has identified "administrative penalties" as an exception to the Fourth Amendment's warrant requirement. Nevertheless, defendants argue the decision to seize and to impound a car pursuant to section 14602.6 is always reasonable because the California legislature determined unlicensed drivers were dangerous. To shore up this argument, defendants have identified six opinions they claim foreclose Avendano-Ruiz's constitutional challenge. Although the constitutionality of section 14602.6 has been challenged numerous times, few courts have addressed whether cities seizing and impounding cars pursuant to section 14602.6 violate the Fourth Amendment.

In one respect, defendants are correct; there have been numerous unsuccessful constitutional challenges to section 14602.6. In *Alviso v. Sonoma Cty. Sheriff's Department*, 186 Cal. App. 4th 198, 207-08 (2010), the California Court of Appeal concluded the state legislature had a rational basis to limit the towing and impoundment provisions of the statute to serious driving violations, and therefore the statute does not violate equal protection. *Id.*; *see also*

*Samples v. Brown*, 146 Cal. App. 4th 787, 807-08 (2007) (rejecting plaintiff's argument that section 14602.6's provision permitting rental car companies to retrieve their vehicles before the end of the thirty-day impoundment period violated the Equal Protection Clause). California and federal courts have also rejected claims asserting section 14602.6 violates procedural due process because the thirty-day impoundment is a form of punishment exacted without due process. *See Alviso*, 186 Cal. App. 4th at 214; *Miranda v. Bonner*, No. CV 08-03178 SJO VBKX, 2013 WL 794059, at *6 (C.D. Cal. Mar. 4, 2013) (rejecting a challenge to section 14602.6 as a violation of procedural due process because the plaintiff received notice of an opportunity for an impoundment hearing). Plaintiffs have furthermore unsuccessfully argued the term "mitigating circumstances" in section 14602.6(b) is void for vagueness. *See Samples*, 146 Cal. App. 4th at 800-04. Still others have challenged section 14602.6(b) on the ground that it violates the principle of separation of powers and the nondelegation doctrine. *Id.* at 798-99. Arguments that section 14602.6 permits uncompensated takings in violation of the Fifth Amendment have similarly failed. *See Miranda*, 2013 WL 794059, at *10.[6] Thus, while many courts have examined and analyzed section 14602.6, few have addressed the issue presented here: whether the initial seizure and thirty-day impoundment of a vehicle driven by an unlicensed driver are reasonable in these particular circumstances.

Next, defendants turn to two federal district court cases involving similar scenarios: *Brewster v. City of Los Angeles*, No. EDCV142257JGBSPX, 2015 WL 9701143, at *1 (C.D. Cal. Feb. 27, 2015), and *Miranda v. Bonner*, 2013 WL 794059, at *1. In *Brewster*, Los Angeles police officers ("LAPD") towed and impounded the plaintiff's car despite offers from two licensed drivers to return the car to a safe location. 2015 WL 9701143, at *1. Before the end of the thirty-

---

[6] Defendants argue *Smith v. Santa Rosa Police Department*, 97 Cal. App. 4th 546 (2002), offered an opinion about the constitutionality of section 14602.6. Yet, *Smith* did not involve a constitutional challenge; the Court of Appeal interpreted the meaning of "mitigating circumstance" under section 14602.6(b) to determine whether car owners who unknowingly lend their cars to unlicensed drivers may retrieve the car before the end of the thirty-day impoundment period. *See id.* at 549, 570.

day impoundment hearing, the plaintiff offered to pay the accrued fees and charges in exchange for release of the car—a request the LAPD refused. *Id.* The plaintiff challenged only the thirty-day impoundment, but did not contest the initial seizure. *Id.* at *3. In response, the LAPD argued the thirty-day impoundment pursuant to section 14602.6 was an "administrative penalty," and therefore unregulated by the analytical framework governing the community caretaking exception to the warrant requirement and the balancing approach courts must take to determine whether interference in a possessory interest is unconstitutional. *See id.* at *4. The district court accepted this argument, and held that the thirty-day impoundment was "designed to deter unlicensed drivers or drivers with a suspended license," and therefore it was "an administrative penalty." *Id.*

This conclusion was not grounded in Supreme Court precedent or published opinions from the Ninth Circuit. Instead, the district court turned to *Salazar v. City of Maywood*, 414 F. App'x 73 (9th Cir. 2011), an unpublished memorandum disposition, and the order of another district court. *See Brewster*, 2015 WL 9701143, at *4-5. Like all summary dispositions, *Salazar* includes few facts and little analysis. What is clear from the opinion, however, is that plaintiffs advanced a host of constitutional claims for the thirty-day impoundment of their vehicles, the district court rejected them, and the Ninth Circuit affirmed.

Nevertheless, the *Brewster* court seized on the following language for the novel proposition that section 14602.6 is an administrative penalty, and therefore reasonable:

> We affirm the district court's grant of summary judgment in favor of defendants on the federal claims. Section 14602.6 applies only in very limited circumstances. The statute authorizes impoundment of vehicles for up to thirty days when an individual is found to be driving with a suspended or revoked license or without ever having been issued a driver's license. Cal. Veh. Code § 14602.6(a)(1). This limited application accords with the California legislature's determination that such a temporary forfeiture is warranted to protect Californians from the harm caused by unlicensed drivers—a determination we have no basis to reject.

*Salazar*, 414 F. App'x at 74; *Brewster*, 2015 WL 9701143, at *5 ("[T]he Ninth Circuit, when faced with a Fourth Amendment challenge to Section 14602.6, upheld the statu[t]e as a temporary forfeiture, thereby finding that the statutorily mandated thirty-day impoundment was not an unconstitutional seizure."). Based on this limited memorandum, the *Brewster* court concluded

"administrative penalties are generally not subject to analysis under the Fourth Amendment, but are more appropriately analyzed under due process standards." 2015 WL 9701143, at *6. After reviewing the legislative history of section 14602.6, the court concluded the thirty-day impoundment was a penalty on drivers "who pose an increased safety risk to community safety." *Id.*

The sparsity of *Salazar* illustrates why the Ninth Circuit concluded such summary orders are not precedential or suitable for citation. *See* 9th Cir. R. App. P. 36-6(a)-(b). There is nothing in *Salazar* to determine whether the plaintiffs advanced facial or as-applied challenges to the statute. The recitation of the facts does not reveal whether the plaintiffs could contact licensed drivers to retrieve the vehicle before the end of the thirty-day impoundment period. Most importantly, the Ninth Circuit's memorandum does not identify which precedential opinions applied to the case. As such, *Brewster* and *Salazar* are not binding or persuasive. No distinction between so-called "administrative penalties" and seizures exists in Supreme Court or Ninth Circuit precedent, and therefore there appears to be no basis to conclude a so-called exception for administrative penalties applies in this case.

In contrast, persuasive authority notes that "[t]he Fourth Amendment protects an individual's interest in possessing his property, and that interest is implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual." *Sandoval v. Cty. of Sonoma*, 72 F. Supp. 3d 997, 1004 (N.D. Cal. 2014). "[M]eaningful interference with an individual's possessory interests in [his or her] property" is a seizure. *Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992) (internal quotation marks omitted). The Fourth Amendment protects property owners against "unreasonable interferences in property interests regardless of whether there was an invasion of privacy." *Miranda*, 429 F.3d at 862 (citing *Soldal*, 506 U.S. at 62–64). Thus, even were there to be an "administrative penalty" exception to the warrant requirement, the Fourth Amendment still demands that the prolonged warrantless seizure be reasonable.

**B.     The Reasonableness of the Initial Seizure**

To determine whether such prolonged seizures are reasonable requires "balanc[ing] 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). Courts must tailor these inquiries to the circumstances presented in each case, and therefore officers cannot rely upon generalizations or broad proclamations of legislative intent to justify prolonged impoundment. *See id.* ("Such determinations are made on a case-by-case basis."); *Sandoval*, 72 F. Supp. 3d at 1008 ("Defendants cannot rely on the generalized legislative findings of section 14607.4 to show that Ruiz was unsafe."). Accordingly, the Fourth Amendment does not permit law enforcement agencies to seize and to impound cars each and every time the statutory elements of section 14602.6 are met. *See Sibron v. New York*, 392 U.S. 40, 61 (1968) (a state may not "authorize police conduct which trenches upon Fourth Amendment rights"). Moreover, a seizure pursuant to a statute is not reasonable just because a statute is constitutional on its face; an officer's decision to exercise authority granted by the statute must also be reasonable.

With that background in mind, the task is to determine whether the government's interests outweigh Avendano-Ruiz's possessory interest in his car to justify the initial seizure of the car. In *South Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976), the Court "establish[ed] that some warrantless impoundments are constitutional: namely, those required by community-caretaking functions of protecting public safety and promoting the efficient movement of traffic." *United States v. Sanders*, 796 F.3d 1241, 1245 (10th Cir. 2015). In contrast, impoundments "justified by police discretion that is either exercised as a pretext for criminal investigation or not exercised according to standardized criteria" are unconstitutional. *Id.* (summarizing *Colorado v. Bertine*, 479 U.S. 367 (1987)). The Tenth Circuit identified a third controversial category: impoundments "carried out pursuant to standardized criteria but not justified by the public safety [or] traffic control." *Id.* Defendants contend traffic control justified the impoundment of Avendano-Ruiz's

car, but insists there are other valid reasons justifying the search: punishment[7] and deterrence.

Undoubtedly, the California legislature sought to punish and to deter those who drive without a valid license. *See* Cal. Veh. Code § 14607.4 (describing the legislative purpose for enacting section 14602.6). Nevertheless, a police officer charged with enforcing the law does not have authority summarily to decide whether a person is worthy of punishment or deterrence. *Wong Wing v. United States*, 163 U.S. 228, 237 (1896) ("It is not consistent with the theory of our government that the legislature should, after having defined an offense as an infamous crime, find the fact of guilt, and adjudge the punishment by one of its own agents.").[8] Due process is an essential precursor to any imposition of punishment.

Nor is deterrence a valid reason to impound a car legally parked on the street. Deterrence—specific and general—is intertwined with punishment, and therefore cannot be doled out without due process. *Cf. Kennedy v. Louisiana*, 554 U.S. 407, 420 (2008) ("[P]unishment is justified under one or more of three principal rationales: rehabilitation, deterrence, and retribution."). Accordingly, the Ninth Circuit has rejected the notion of impoundment as deterrence. *See Miranda*, 429 F.3d at 866 ("The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale."). Authority to impound a car "must be guided by conditions which 'circumscribe the discretion of the individual officers' in a way that furthers the caretaking purpose." *Id.* (quoting *Bertine*, 479 U.S. at 376 n.7).

---

[7] Although defendants never explicitly justify the impoundment as punishment, their insistence that the impoundment is a valid administrative *penalty* certainly suggests they believe punishment is one of the government interests impoundment serves.

[8] The Supreme Court has repeatedly stressed the importance of the warrant requirement when law enforcement officials undertake a search to discover evidence of criminal wrongdoing. *E.g.*, *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995) ("Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, this Court has said that reasonableness generally requires the obtaining of a judicial warrant . . . ." (citation omitted)). A rule permitting officers to circumvent the warrant requirement to *punish* a person for criminal or administrative wrongdoing undermines this longstanding rule. Officers would have few incentives to obtain warrants to search for evidence of a crime if they could avoid doing so to further punishment. Nothing in Supreme Court or Ninth Circuit caselaw suggests this anomalous result follows from the text or purpose of the Fourth Amendment.

Only the community caretaking doctrine remains as a possible justification for the initial impoundment of Avendano-Ruiz's car. "Whether an impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." *Miranda*, 429 F.3d at 864. Moreover, the fact a driver has violated traffic laws is insufficient to justify impoundment; officers may initiate a tow only when the violation of the regulation "prevents the driver from lawfully operating the vehicle." *Id.* at 865; *see also United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996) ("The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets."). Nevertheless, when deciding whether to impound a vehicle, the officer need not consider whether "less intrusive means" will protect the public. *Miranda*, 429 F.3d at 865 n.6.

At the time of the arrest, Avendano-Ruiz's car was parked legally. Although parking on Bodega Avenue is limited to two hours maximum most days of the week, Avendano-Ruiz parked his car in that position on a Sunday, when the two-hour restriction was not in effect. He had thirty-three hours[9] to find a licensed and registered driver who could move the car. Avendano-Ruiz twice told Wong that he knew someone who could move the car within a few minutes—a fact that undermines Wong's concern about the car blocking traffic. *See Miranda*, 429 F.3d at 866 (suggesting that an officer impounds a car unreasonably if it is parked in the owner's driveway, and therefore not posing a hazard to other drivers).

Defendants contend Wong acted as community caretaker by preventing Avendano-Ruiz from driving the car again that morning, thereby protecting other drivers from an unsafe driver. Principally, defendants return to the generalized legislative findings of section 14607.4 to prove Avendano-Ruiz was unsafe. Reliance on such generalized findings is improper, *Sandoval*, 72 F.

---

[9] The parking restriction begins at 7:00 a.m. on Monday mornings, and therefore Avendano-Ruiz had until 9:00 a.m. to move his car.

Supp. 3d at 1008, and therefore they must offer more.

They do, but nevertheless fail to offer enough to hold no reasonable factfinder or jury could conclude the decision to impound the car was reasonable in these circumstances. At the time of the stop, Wong knew that Avendano-Ruiz did not have a valid driver's license from California or any other jurisdiction and that he had been convicted of driving without a valid license before. He did not know the underlying details of that prior conviction, and therefore the mere fact of the prior conviction for driving without a license is not dispositive evidence that Avendano-Ruiz was an unsafe driver. Finally, defendants contend Avendano-Ruiz demonstrated unsafe driving habits by veering over the dividing line just before the stop. While this traffic infraction suggests Avendano-Ruiz was inattentive one time, any concern about his unsafe driving would have been assuaged if the officer had allowed Avendano-Ruiz to contact Olivares about retrieving the car. Furthermore, this record does not provide enough information about just how dangerous and serious this driving infraction was—a fact that may be critical when evaluating whether the community caretaking exception justifies the seizure.

Finally, defendants suggest Wong reasonably concluded that Avendano-Ruiz intended to drive the car himself because he had been convicted for driving without a valid license before. Wong's hunch about Avendano-Ruiz's true intentions is not enough to warrant impoundment of the car. *See id.* at 865-66 ("While [the officer] may not have believed the Mirandas would comply with all regulations in the future" the officer still acted unreasonably by impounding a car parked legally and posing no threat to the public).[10] All in all, defendants have not offered compelling

---

[10] Occasionally, courts have approved the warrantless impoundment of cars parked legally because they were vulnerable to theft or vandalism. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1025 (9th Cir. 2009) (concluding the city reasonably impounded the plaintiff's legally parked car when there was a concern the city might be held liable if the car was stolen, vandalized, or harmed in some way). The suggestion that police officers are obliged to impound cars to protect them in all cases implies an exception to the warrant requirement with extraordinary breadth. *See Duguay*, 796 F.3d at 352 ("[The] suggestion that the police were obliged to impound the vehicle to protect it from theft or vandalism, strikes us as making up new police obligations after the fact where none existed before. The police do not owe a duty to the general public to remove vulnerable automobiles from high-crime neighborhoods." (quotation marks omitted)). Whether police have a duty to protect cars from vandalism or theft, in fact, is not critical to the outcome of this case; defendants do not argue that Avendano-Ruiz's car was vulnerable to crime.

evidence that impoundment of Avendano-Ruiz's car served any community caretaking function sufficient to enter summary judgment.

### C. The Reasonableness of the 30-Day Impoundment

Next, the inquiry must center on whether these governmental interests outweigh Avendano-Ruiz's possessory interest to vindicate the thirty-day impoundment of the car. "[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests." *United States v. Jacobsen*, 466 U.S. 109, 124 (1984). "The private interest in the uninterrupted use of an automobile is substantial. A person's ability to make a living and his access to both the necessities and amenities of life may depend upon the availability of an automobile when needed." *Stypmann v. City and Cty. of San Francisco*, 557 F.2d 1338, 1342–43 (9th Cir. 1977). The key inquiry is whether those possessory interests outweigh the government's interests. *Sullivan*, 797 F.3d at 633. Defendants identify promoting public safety and preventing accidents as the two interests justifying the decision to impound Avendano-Ruiz's car for thirty days. At the time of the impoundment hearing, SPD had learned more about Avendano-Ruiz's driving record, and therefore made the decision to prolong the impoundment. That investigation, they contend, revealed that Avendano-Ruiz was an unsafe driver who should not have his car for thirty days.

Many of the arguments they make in favor of the decision to impound Avendano-Ruiz's car for thirty days mirror the very same arguments considered and rejected in *Sandoval*. While this district court opinion is not binding, the factual similarities between the two cases are striking and *Sandoval*'s reasoning is persuasive. The facts and circumstances of this case differ from those in *Sandoval* in one significant respect: Avendano-Ruiz does not have a Mexican driver's license. *See id.* at 1008 (noting the plaintiff had received a license from Mexico). In *Sandoval*, the court made plain that the fact of the plaintiff's licensure in Mexico was significant. To start, the court concluded the plaintiff had not, in fact, violated California's prohibition against driving without having ever been licensed because he had been licensed. *Id.* at 1007. In addition, because the plaintiff had been licensed before, the court determined the generalized findings of section

14607.4 were inapplicable to the plaintiff. *Id.* at 1008. Nevertheless, this difference alone does not render the reasoning or holdings of *Sandoval* inapplicable; it merely suggests triable issues of fact remain.

In *Sandoval*, the county defendants seized and impounded the plaintiff's car even though his friend with a valid California driver's license was available to take possession of the car at the time of the impoundment. Before the impoundment, the plaintiff had pleaded guilty multiple times to driving without a valid license although he had been issued a Mexican driver's license. *Id.* at 1001, 1006. The plaintiff challenged the thirty-day impoundment of his car, but did not contest the constitutionality of the initial seizure of his car. Sonoma County argued, as the Sebastopol defendants do here, that the thirty-day impoundment was reasonable because section 14602.6 authorized thirty-day impoundment and because the plaintiff was an unsafe driver. *Id.* at 1006, 1008.

To support the thirty-day impoundment of the *Sandoval* plaintiffs' vehicles, defendants argued the legislative findings of section 14607.4(f) provided sufficient basis to conclude the plaintiff was an unsafe driver. The district court rejected Sonoma County's attempt to rely upon generalized legislative findings about the importance of seizing and impounding the cars of unlicensed drivers. *Id.* at 1008. That conclusion flows naturally from the Ninth Circuit's admonition that "the decision to impound pursuant to authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment." *Miranda*, 429 F.3d at 864. Such generalized legislative findings may justify a grant of discretion to officers to impound cars for thirty days in the appropriate context, but they do not permit officers to treat all drivers the same regardless of circumstances. Accordingly, as in *Sandoval*, the defendants' reliance on these generalized findings does not render reasonable their decision to impound Avendano-Ruiz's car for thirty days.

Next, the *Sandoval* defendants argued the plaintiff had a track record of unsafe driving. The plaintiff had been convicted multiple times for driving without a valid license and had received citations for driving with a child outside of a seatbelt and failing to come to stop at a stop

sign. *Id.* at 1108-09.  The court acknowledged that these citations suggested unsafe driving habits at first blush, but not so upon closer inspection.  First, failure to come to a complete stop one time was not considered "persuasive evidence that a driver is unsafe." *Id.* at 1009.  Second, the court noted that the plaintiff's child was unbuckled because his wife was consoling the crying child— hardly evidence of unsafe driving. *Id.*

Defendants contend Avendano-Ruiz had a proven track record of unsafe driving, pointing to his two prior convictions for driving without a valid license or insurance, one moving violation, and one accident.  In 2005, Avendano-Ruiz was involved in an accident for which he was at fault.  In 2008, he was cited for running a red light.  A single instance of running a red light six years before is not strong evidence of unsafe driving.  Nor is evidence of an accident nine years before necessarily evidence of Avendano-Ruiz's poor driving skills.  Yet, these two incidents provide some evidence to support defendants' belief that they needed to protect the public from his unsafe and unlicensed driving.

Nevertheless, this position weakens in light of the fact Avendano-Ruiz could retrieve his car after thirty days by paying a (substantial) storage fee. *See id.* ("Defendants' argument makes little sense when they admit that, after the thirty-day period was over, Ruiz was able to obtain his car by merely paying a storage fee . . . .").[11]  Finally, there may be no need to protect the public from Avendano-Ruiz's allegedly unsafe driving if another person—a licensed driver—retrieves the car, thereby limiting the accrual of impoundment fees.

The record does not definitively establish these concerns for public safety outweigh Avendano-Ruiz's possessory interest in his car.  Defendants argue that Avendano-Ruiz's possessory interest in his car is diminished by the fact he does not have a valid license to drive it.  Without that license he "had a somewhat reduced interest in the possession of his vehicle at the time [of impoundment] at least until he obtained a California license." *Id.* at 1010.  While

---

[11] Nothing in the record suggests Avendano-Ruiz had to show proof of licensure before the SPD released the car.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 15-cv-03371-RS

16

Avendano-Ruiz's status as an unlicensed driver diminishes his possessory interest in the vehicle, that interest was not negligible or non-existent. *Id.* An unlicensed car owner may still sell the car or use it as collateral. Impoundment impairs the owner's ability to do either.

In sum, material disputes of fact remain about the strength of defendants' community-caretaking interests when weighed against the defendants. Accordingly, defendants' motion for summary judgment must be denied.

**C. Does the existence of probable cause of a criminal traffic violation justify the initial tow or thirty-day impoundment?**

In their reply briefs, defendants raise for the first time the possibility that the seizure and thirty-day impoundment of the car was reasonable because Wong had probable cause to believe Avendano-Ruiz had committed a misdemeanor. Parties may not raise new arguments in reply briefs, and consideration of such arguments is improper. *E.g.*, *Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot raise a new issue for the first time in their reply briefs."); *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

In any event, the Ninth Circuit has already rejected this argument. In *Miranda*, the court addressed "probable cause to believe that the driver committed a traffic violation is sufficient justification by itself to make the impoundment of the vehicle reasonable under the Fourth Amendment." 429 F.3d at 862. There is a sharp contrast between police officers' broad discretion to make warrantless arrests when supported by probable cause and their discretion to impound vehicles. *Id.* at 862–63. Impoundment requires "a more finely tuned approach" and limited authority to impound a car to situations where the officer had to act as a community caretaker. *Id.* at 863.

"In their 'community caretaking' function, police officers may impound vehicles that 'jeopardize public safety and the efficient movement of vehicular traffic.'" *Id.* at 864 (quoting *Opperman*, 428 U.S. at 368–69). The car's location "and the police officers' duty to prevent it

1  from creating a hazard to other drivers or being a target of vandalism or theft" inform whether the
2  community caretaking doctrine warrants impoundment. *Id.* (citing *United States v. Jensen*, 425
3  F.3d 698, 706 (9th Cir. 2005). The fact the driver was arrested or cited for a traffic violation is not
4  a relevant consideration "except insofar as it affects the driver's ability to remove the vehicle from
5  a location at which it jeopardizes the public safety or is at risk of loss." *Id.* Where, as here, the car
6  is parked legally or the driver's arrest or citation does not affect the driver's ability to remove the
7  car from an unsafe or illegal location, the fact the officer has probable cause to believe the driver
8  committed traffic or criminal violation is of no moment.

9      Next, defendants suggest they had authority to impound the car because it was an
10 instrumentality of crime, i.e., driving without having been licensed. In *Florida v. White*, 526 U.S.
11 559, 565 (1999), the Supreme Court concluded police did not offend the Fourth Amendment by
12 seizing a vehicle that was itself contraband—an instrumentality in the commission of a felony. *Id.*
13 at 565 & n.3 (citing Fla. Stat. § 932.701 (defining "contraband")); *see also Bush v. O'Brien*, No. C
14 09-0947 RS PR, 2010 WL 3324959, at *2 (N.D. Cal. Aug. 23, 2010) ("Warrantless seizure of an
15 automobile which officers have probable cause to believe was used as an instrumentality in the
16 commission of, or in aiding or abetting in the commission of, any felony, does not violate the
17 Fourth Amendment.").

18     Neither *White* nor *Bush* is applicable to the facts presented here. First, driving without
19 having ever been licensed is a misdemeanor, not a felony. *See* Cal. Veh. Code §§ 12500,
20 40000.11(b). Second, Avendano-Ruiz's car was impounded, not forfeited. The distinction is not
21 merely semantic. Civil forfeiture is a form of punishment available only after someone has been
22 convicted of a crime and involves the permanent deprivation of property. *See Miranda*, 429 F.3d
23 at 866. In contrast, an impoundment is temporary and may be authorized without a finding of
24 guilt. Indeed, California law recognizes this distinction. California Vehicle Code sections 12500
25 and 40000.11 authorize officers to initiate forfeiture proceedings conducted by courts. *See* Cal.
26 Veh. Code § 146.07(e)(1)-(5). Defendants opted, however, for the extrajudicial option—
27 impoundment. Thus, the justifications for seizing a car subject to forfeiture are inapplicable to

those presented here.

### D. Qualified Immunity

Avendano-Ruiz advances these two constitutional claims against Officer Weaver in his individual capacity. Qualified immunity shields Weaver from personal liability for constitutional violations if the right violated was not "clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, ---, 131 S. Ct. 2074, 2080 (2011). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 2083 (internal quotation marks and alterations omitted). The test is not whether there is authority "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

The constitutional questions this case presents are not "beyond debate." Indeed, the debate about the constitutionality of applying section 14602.6 rages on as the numerous cases challenging California law enforcement officers' impoundment authority demonstrate. Accordingly, Weaver enjoys the qualified immunity's protection, and summary judgment must be granted in his favor.

### V. CONCLUSION

Material disputes of fact remain as to whether the initial seizure and thirty-day impoundment of Avendano-Ruiz's car were reasonable under the circumstances. Accordingly, defendants' motion for summary judgment is denied in most respects. Because the doctrine of qualified immunity protects Officer Weaver as an individual from standing trial for the violations of constitutional rights that were not clearly established in August 2014, he is entitled to qualified immunity. Summary judgment must be entered in his favor.

**IT IS SO ORDERED**.

Dated: May 26, 2016

RICHARD SEEBORG
United States District Judge