UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAHUM AVENDANO-RUIZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY OF SEBASTOPOL, et al.,<br><br>　　　　Defendants. | Case No. 15-cv-03371-RS<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Early on a Sunday morning in August 2014, Sebastopol Police ("SPD") Officer Charles Wong stopped plaintiff Nahum Avendano-Ruiz for a traffic violation. Avendano-Ruiz legally parked his car on a main thoroughfare in a spot usually limited to two-hour use except on Sundays, when all-day parking is permitted. When Wong discovered that Avendano-Ruiz did not have a valid license and had previously been convicted of driving without a valid license, he arranged for Avendano-Ruiz's car to be towed and impounded for 30 days pursuant to California Vehicle Code section 14602.6. Avendano-Ruiz suggested the tow was unnecessary because he had friends with valid licenses who could drive the car away from the site of the stop. Wong denied this request. At the subsequent tow hearing, Avendano-Ruiz attempted to retrieve his car before the 30-day period expired, but the SPD and Chief Police Officer Jeremy Weaver ordered the impound to continue.

Avendano-Ruiz now brings claims pursuant to 42 U.S.C. § 1983 against the City of

1   Sebastopol and the SPD for violations of his Fourth Amendment rights. Avendano-Ruiz contends
2   the initial seizure and subsequent decision to impound the car for 30 days were unreasonable
3   because they were warrantless. He now moves for summary judgment on his claim that the
4   warrantless 30-day impoundment of his car was an unreasonable seizure in violation of the Fourth
5   Amendment.

6   Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral
7   argument, and the hearing set for October 13, 2016, is vacated. For the reasons that follow,
8   Avendano-Ruiz's motion is granted in part and denied in part.

## II. BACKGROUND

10  Just before 2:00 a.m. on a Sunday in August 2014, Officer Wong witnessed Avendano-
11  Ruiz driving his Chrysler in downtown Sebastopol. Avenadano-Ruiz's car drifted over the lane
12  marker dividing the two westbound lanes on Bodega Avenue before swerving back into the
13  original lane. Wong activated his lights, and Avendano-Ruiz pulled over to the side of Bodega
14  Avenue reserved for parking. Wong Decl. ¶ 2; Avendano-Ruiz Decl. Exs. 1-3 (photographs of the
15  parking signs). The parking spot Avendano-Ruiz pulled into is available for two-hour parking
16  from 7:00 a.m. until 6 p.m., Monday through Saturday. *See* Roman Decl. Exs. 1-3. Parking is
17  unlimited on Sunday. *Id.*

18  Once the car was pulled over to the side of the road, Wong approached and asked the
19  driver and passenger to produce identification. Both men handed the officer Matricula Cards
20  issued by the Mexican Consulate. Wong Decl. ¶ 3. Wong asked whether Avendano-Ruiz had a
21  driver's license issued by any state or foreign jurisdiction. *Id.* Avendano-Ruiz admitted he did
22  not. *Id.* To follow up, Wong contacted dispatch to confirm the status of Avendano-Ruiz's license
23  and to ascertain whether Avendano-Ruiz had been convicted of driving without a valid license
24  before. *Id.* The dispatcher notified Wong that Avendano-Ruiz had been convicted of driving
25  without a valid license in violation of California Vehicle Code section 12500. Based on that
26  information, Wong informed Avendano-Ruiz that the car would be towed pursuant to California

United States District Court
Northern District of California

Vehicle Code section 14206.6,[1] consistent with SPD's policy to use the towing provision of the code when a driver had a prior section 12500 conviction. Wong Decl. ¶ 3.

Avendano-Ruiz suggested the tow was not necessary; he twice told Wong that a friend could retrieve the car. The friend lived two blocks away and had a valid California driver's license.[2] Wong rejected this proposal and said: "That's not how this works." Cook Decl. Ex. F, Wong Dep. at 68:11-17. Wong made arrangements to have Avendano-Ruiz's car towed and stored according to the SPD "30 Day Storage Program." Cook Decl. Ex. D. This program requires that a vehicle be towed if a driver "[n]ever had a license and [was] previously cited" for driving without a valid license. *Id.* at 10; *see also* Ex. E, Weaver Dep. at 64:1-8 (stating Wong towed Avendano-Ruiz's car pursuant to "[t]he authority granted under [section] 14602.6(a) and being in compliance with [SPD] department policy that he determined that he was unlicensed, never had been, and had a prior."); Weaver Decl. ¶ 4 ("As of August 2014, . . . the SPD enforced Section 14602.6 only against those individuals (1) who had never been licensed at any time in any jurisdiction and (2) who had previously been convicted of violating Section 12500.").

When peace officers seize vehicles pursuant to section 14602.6(a), they must provide the vehicle owner with an "opportunity for a storage hearing to determine the validity of, or consider any mitigating circumstances attendant to, the storage." Avendano-Ruiz requested such a hearing, which took place the day after the car was towed. Ginn Decl. ¶ 2. In preparation for the hearing, SPD Officer David Ginn reviewed Avendano-Ruiz's arrest and driving records and discovered the following traffic violations: (1) a 2005 conviction for driving without a valid license or insurance; (2) a 2008 conviction for driving without a valid license or insurance; and (3) a 2008 citation for running a red light. *Id.*; *see also id.* Ex A. At the hearing, Ginn explained SPD would not release

---

[1] Section 14602.2(a)(1) permits peace officers to arrest immediately and to "cause the removal and seizure of [the] vehicle" if they discover the driver "was driving a vehicle without ever having been issued a driver's license." The statute further provides that "[a] vehicle so impounded shall be impounded for 30 days." *Id.*

[2] Avendano-Ruiz's friend, Javier Olivares, submitted a declaration explaining he was available to pick up the car, and could have arrived within ten to fifteen minutes. Olivares Decl. ¶¶ 3-5.

the car before the 30-day period expired because Avendano-Ruiz did not have a valid license. Cook Decl. Ex. H, Tow Hr'g Tr. at 62.

Avendano-Ruiz appealed Ginn's determination to Chief Weaver. In response to the appeal, Weaver conducted further investigation and discovered that Avendano-Ruiz's car had been impounded for 30 days after his previous citations for driving without a license. Weaver Decl. ¶ 5. In addition, the Santa Rosa Police Department informed Weaver that the 2005 conviction for driving without a license arose from a car accident Avendano-Ruiz caused. *Id.* Avendano-Ruiz requested early release of the car and argued the prolonged seizure violated the Fourth Amendment, but Weaver denied the request. Weaver Decl. ¶ 6.

After the 30-day period had passed, Avendano-Ruiz received a release from SPD allowing him to reclaim his car. Avendano-Ruiz Decl. ¶ 6. Before taking possession of the car, he had to pay a $75.00 release fee and the costs of towing and storage, which totaled $2,060.00. *Id.* Avendano-Ruiz's friend, who has a valid California driver's license, drove the car from the SPD storage yard. *Id.*

In July 2015, Avendano-Ruiz filed claims on behalf of a class of similarly situated people against the City of Sebastopol, the SPD, and Chief Weaver in his personal and official capacities, asserting two claims for relief pursuant to 42 U.S.C. § 1983 and California Civil Code section 52.1. First, Avendano-Ruiz contends defendants violated the Fourth and Fourteenth Amendments of the U.S. Constitution and Article I, section 13 of the California Constitution when they towed his car from Bodega Avenue without a warrant. Second, Avendano-Ruiz contends the 30-day warrantless impoundment of his car was also an unreasonable seizure in violation of the U.S. and California constitutions.[3] Defendants moved for summary judgment, contending the initial seizure of the car and 30-day impoundment were reasonable as a matter of law, and that Weaver was entitled to qualified immunity. Weaver was granted qualified immunity, but defendants' motion

---

[3] The Second Amended Class Complaint also includes a third claim for relief for substantive due process violations. That claim has been dismissed without leave to amend. *See* Order of December 18, 2015.

was otherwise denied.  Now, Avendano-Ruiz moves for summary judgment on his claim that the warrantless 30-day impoundment of his car was an unreasonable seizure in violation of the Fourth Amendment.

### III.  LEGAL STANDARD

A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party who seeks summary judgment bears the initial responsibility of identifying an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies this initial burden, the non-moving party must present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  "Only disputes over facts that might affect the outcome of the suit under governing law" are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue exists if the non-moving party presents evidence from which a reasonable fact-finder, viewing the evidence in the light most favorable to that party, could resolve the material issue in his favor.  *Id.* at 248-49.

### IV.  DISCUSSION

Avendano-Ruiz's motion for summary judgment consists of three separate arguments: that the warrantless 30-day impoundment of his car was an unreasonable seizure in violation of the Fourth Amendment; that the City of Sebastopol and the SPD are liable for the alleged Fourth Amendment violation under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); and that he can recover damages caused by the alleged Fourth Amendment violation.

#### A.  The Reasonableness of the 30-Day Impoundment

The Fourth Amendment prohibits unreasonable searches and seizures.  U.S. Const. amend. IV.  The Supreme Court "has repeatedly held that searches conducted outside the judicial process, without prior approval by a judge or a magistrate judge, are *per se* unreasonable subject only to a few specifically established and well-delineated exceptions."  *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015) (internal quotation marks and alteration omitted) (emphasis in original).  "The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment,"

and therefore the burden is on the government to demonstrate that a warrantless seizure falls under one of the "few specifically established exceptions to the warrant requirement." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) (internal quotation marks omitted). Depending on its duration, a warrantless seizure may be excused upon balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703, 707-09 (1983) (holding that an initially lawful seizure of luggage became unreasonable when policed waited 90 minutes to obtain a warrant); *see also Sandoval v. Cty. of Sonoma*, 72 F. Supp. 3d 997, 1009 (N.D. Cal. 2014) (applying the *Place* balancing test to "determine whether a prolonged warrantless seizure was reasonable").

Plaintiff's motion argues simply that a warrant must be obtained whenever "reasonably practicable," *Carroll v. United States*, 267 U.S. 132, 156 (1925), and that a warrant was reasonably practicable at the time his car was impounded because "the Sonoma County Superior Court makes its judicial officers available to accept and review warrant applications on a 24/7 basis, any day of the year." Pl.'s Mot. for Summ. J. 6. In response, defendants do not argue for the application of an established exception to the warrant requirement. Instead, they argue the initial seizure of Avendano-Ruiz's car was legal, and that the 30-day impoundment subsequent to a legal seizure does not implicate any Fourth Amendment interest.

*1. The Legality of the Initial Seizure*

At its outset, plaintiff's motion states: "On the instant motion Plaintiff takes no position on the legality of the initial seizure of his Chrysler." *Id.* Defendants' response attempts to seize on this statement and, arguing that the car was lawfully seized as an instrumentality of a crime, proclaims: "Thus, for the purposes of this motion, it is conclusively established that the initial seizure complied with the Fourth Amendment." Defs.' Resp. in Opp'n 3. Not only has defendants' argument that the car was lawfully seized as the instrumentality of a crime been rejected, *see* Order of May 26, 2016 (citing *Miranda*, 429 F.3d at 862 (holding that "probable cause to believe that the driver committed a traffic violation is [not] sufficient justification by

itself to make the impoundment of the vehicle reasonable under the Fourth Amendment")), but it strains credulity to think a plaintiff would concede a claim that already survived defendant's motion for summary judgment, *see id.* Plaintiff's statement is best understood as a simple indication that he is not seeking summary judgment on his first claim that the initial seizure of his car violated the Fourth Amendment.

*2. Whether the 30-Day Impoundment Implicates a Fourth Amendment Interest*

Defendants next argue that the continued retention of property after an initial lawful seizure is properly analyzed as a deprivation of property under the Due Process clause of the Fourteenth Amendment, rather than a continuing seizure under the Fourth Amendment. The immediate problem with this argument is it assumes the seizure of Avendano-Ruiz's car was lawful, a matter than has not been conclusively adjudicated. Defendant's motion for summary judgment already sought a legal judgment that Avendano-Ruiz's car was lawfully seized, and that motion was denied. *See* Order of May 26, 2016 at 9-14; *see also supra* Part IV.A.1. Whether the initial seizure of Avendano-Ruiz's car was lawful is the central question of his first claim for relief, and that claim is on the path to trial. Moreover, in an earlier pleading defendants seemingly conceded that Avendano-Ruiz *can* maintain a Fourth Amendment claim on the basis of the 30-day impoundment. *See*. Defs.' Mot. for Summ. J. 13 ("A seizure 'lawful at its inception' can still violate the Fourth Amendment if its manner of execution, including length of the seizure, 'unreasonably infringes possessory interests.'") (quoting *United States v. Jacobsen*, 466 U.S. 109, 124 & n.25 (1984)).[4]

---

[4] Avendano-Ruiz pled his Fourth Amendment impoundment claim in his original complaint. Defendants have since had, and passed on, numerous opportunities to raise this argument: a motion to dismiss, a motion for summary judgment, and a motion for reconsideration. Defendants' failure to raise this argument until responding to plaintiff's motion for summary judgment, despite decent (but ultimately unpersuasive) authority supporting it and multiple opportunities to raise it, suggests they have been waiting to deploy it at the eleventh hour, only after their other arguments failed. Such tactics would threaten prejudice to a plaintiff in any case, but the case for prejudice is all the more profound here, where Avendano-Ruiz would have reasonably considered his ability to raise his impoundment claim uncontested, given defendants' apparent concession in their motion for summary judgment.

In any event, persuasive authority supports Avendano-Ruiz's ability to maintain a separate Fourth Amendment claim on the basis of the 30-day impoundment.  *See Sandoval* 72 F. Supp. 3d at 1002 (citations omitted) ("The Fourth Amendment protects against unreasonable searches and seizures. . . . A warrantless seizure that was valid at its inception may become unreasonable by virtue of a delay in time. . . .The Ninth Circuit has repeatedly applied the Fourth Amendment's reasonableness analysis to the question of whether the government's prolonged, warrantless retention of seized property is constitutional.").  Although other Circuits have held that the retention of lawfully seized property is not actionable under the Fourth Amendment, s*ee, e.g.*, *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003), *Sandovol* did not follow these authorities in a very similar situation because "in the Ninth Circuit, the Fourth Amendment protects Plaintiffs' interest in possessing property that has been validly seized," 72 F. Supp. at 1003.  Specifically, it pointed to *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988) and *United States v. Sullivan*, 753 F.3d 845 (9th Cir. 2014), *opinion withdrawn and superseded on reh'g*, 797 F.3d 623 (9th Cir. 2015).  In *Dass*, the Ninth Circuit held that the government committed unreasonable seizures when, after lawfully seizing packages suspected of containing marijuana, it retained possession of the packages for seven to 23 days before obtaining warrants.  849 F.2d at 414-16.  In *Sullivan*, the Ninth Circuit likewise considered the reasonableness, for Fourth Amendment purposes, of a 21-day delay between lawfully seizing the plaintiff's laptop and obtaining a warrant.  *Sullivan*, 797 F.3d at 635.  *Sandovol* also relied on two Supreme Court cases ― *Jacobsen*, 466 U.S. at 124 & n.25, and *Place*, 462 U.S. at 707-09 ― in reaching its holding.  *See* 72 F. Supp. 3d at 1004.  In *Jacobsen*, the Court held the warrantless destruction of lawfully seized contraband implicated Fourth Amendment interests because "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment." 466 U.S. at 124.  In *Place*, the Court held that a 90-minute delay in obtaining a warrant to search lawfully seized luggage amounted to an unreasonable seizure under the Fourth Amendment. 462 U.S. at 709.  On the basis of these authorities, *Sandoval* held a plaintiff could challenge the 30-day impoundment of his car pursuant to section 14602.6 as an unlawful seizure, even if the seizure had been lawful at its outset, and even though a tow

hearing had been conducted. 72 F. Supp. at 999-1004.

Defendants attempt to diminish the force of *Sandoval*, emphasizing that it conflicts with holdings from other Circuits, and arguing that it improperly relied on *Dass*, *Sullivan*, and *Place*. In defendants' view, that trio of cases is inapplicable because each of them concerned the delay between seizures and subsequent search warrant applications "with no intervening due process afforded," whereas this case featured "a hearing that complied with due process" between the seizure and impoundment. Not one of the three opinions, however, indicates that due process would have cured a potential Fourth Amendment violation. Neither does *Sandoval*, where a tow hearing was also conducted. Moreover, defendants' argument assumes the tow hearing in this case provided Avendano-Ruiz with due process, a question that has not been adjudicated.[5]

Most importantly, defendants identify no Ninth Circuit decisions supporting their position or even curtailing the reach of *Dass* and *Sullivan*. Although those cases do not concern factual scenarios exactly analogous to the events here, they nonetheless convey the current state of Ninth Circuit law, which allows a litigant to challenge the ongoing seizure of property even if the initial seizure was lawful. Thus, *Sandoval* remains the most persuasive authority on the question of Avendano-Ruiz's ability to maintain a separate Fourth Amendment claim on the basis of the 30-day impoundment, and it compels the conclusion that he can indeed maintain such a claim.

*3. Whether Any Reasonable Jury Could Find the 30-Day Impoundment Reasonable*

Ultimately, whether the impoundment of Avendano-Ruiz's car was reasonable turns on whether defendants can meet their burden of showing that an exception to the warrant requirement applies. *See Miranda*, 429 F.3d at 862. Although on this motion defendants have not argued for the existence of an exception, they argued on *their* motion for summary judgment that the "community caretaking" exception justified the warrantless impoundment of Avendano-Ruiz's car. *See id*. at 864 (citations omitted). Although defendants were not granted summary judgment,

---

[5] Defendants did, however, prevail on their motion to dismiss plaintiff's claim that he was given *insufficient notice* of the tow hearing and thus deprived of due process. *See* Order of October 2, 2015 at 7.

they did provide *some* evidence that would support the application of the community caretaking exception. *See* Order of May 26, 2016 at 14-17. Because defendants could be expected to make the same case for the community caretaking exception at trial, a reasonable fact-finder could determine that such an exception excused the 30-day warrantless impoundment of Avendano-Ruiz's car. Thus, Avendano-Ruiz is not entitled to summary judgment on his claim that the impoundment was an unreasonable seizure in violation of the Fourth Amendment. Accordingly, his motion is denied.

### B.  *Monell* Liability and Damages

Avendano-Ruiz also argues that Sebastopol and the SPD can be held liable for his impoundment claim according to the municipal liability rule of *Monell*. *See* 436 U.S. at 694 (providing for municipal liability on 42 U.S.C. § 1983 claims when a constitutional injury is caused by official government policy or custom). According to Avendano-Ruiz, defendants' admissions that they never seek a warrant when executing a mandatory impoundment pursuant to California Vehicle Code section 14602.6 demonstrates the existence of a municipal policy directing warrantless seizures. Because his car was seized pursuant to this policy, Avendano-Ruiz argues defendants can be held liable according to *Monell*. Defendants make no effort at all to contest Avendano-Ruiz's *Monell* argument. Nonetheless, they will be liable according to *Monell* only if Avendano-Ruiz succeeds on his impoundment claim. Because Avendano-Ruiz is not entitled to summary judgment on that claim, defendants cannot yet be adjudged liable according to *Monell*.

Lastly, Avendano-Ruiz argues that he is entitled to compensatory damages for losses proximately caused by defendants' alleged Fourth Amendment violation. Avendano-Ruiz will only be able to recover compensatory damages if he prevails on his impoundment claim, and is not yet entitled to damages.

### V.  CONCLUSION

Because a reasonable fact-finder could determine the community caretaking exception excused the warrantless 30-day impoundment of Avendano-Ruiz's car, he is not entitled to summary judgment on his impoundment claim. Thus, defendants cannot yet be held liable under

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 15-cv-03371-RS

1  *Monell*, and Avendano-Ruiz is not yet entitled to damages. Accordingly, his motion for summary
2  judgment is denied.
3  **IT IS SO ORDERED**.

5  Dated:  October 4, 2016

_____
RICHARD SEEBORG
United States District Judge