UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAHUM AVENDANO-RUIZ, <br> Plaintiff, <br> v. <br> CITY OF SEBASTOPOL, et al., <br> Defendants. | Case No. 15-cv-03371-RS <br><br> **ORDER DENYING MOTION FOR CLASS CERTIFICATION** |

**I. INTRODUCTION**

Plaintiff Nahum Avendano-Ruiz brings claims pursuant to 42 U.S.C. § 1983 against the City of Sebastopol and the Sebastopol Police Department ("SPD") for violations of his Fourth Amendment rights. SPD Officer Charles Wong stopped Avendano-Ruiz for a traffic violation in August 2014. Upon discovering Avendano-Ruiz did not have a valid license and had previously been convicted of driving without a valid license, Wong arranged for Avendano-Ruiz's car to be towed and impounded for 30 days pursuant to California Vehicle Code section 14602.6. At the subsequent tow hearing, Avendano-Ruiz attempted to retrieve his car before the 30-day period expired, but SPD and Chief Police Officer Jeremy Weaver ordered the impound to continue. Although the operative complaint contests both the initial seizure of Avendano-Ruiz's vehicle and the decision to continue holding it, he seeks class certification as to his second claim for relief only, which specifically challenges the warrantless 30-day impound period as an unreasonably prolonged seizure under the Fourth Amendment. For the reasons explained below, the motion for

class certification is denied.

## II. BACKGROUND

Just before 2:00 a.m. on a Sunday in August 2014, Officer Wong witnessed Avendano-Ruiz's Chrysler swerving over a lane marker while driving down Bodega Avenue in downtown Sebastopol. Wong signaled for Avendano-Ruiz to pull over to the side of the road, whereupon he approached and asked for identification. When asked whether he had a driver's license issued by any state or foreign jurisdiction, Avendano-Ruiz admitted he did not. After being notified by police dispatch that Avendano-Ruiz had been previously convicted of driving without a valid license in violation of California Vehicle Code section 12500, Wong informed Avendano-Ruiz that the car would be towed pursuant to California Vehicle Code section 14206.6, consistent with the SPD's policy to use the towing provision of the code when a driver has a prior section 12500 conviction. Section 14602.2(a)(1) permits peace officers to arrest immediately and to "cause the removal and seizure of [the] vehicle" if they discover the driver "was driving a vehicle without ever having been issued a driver's license." The statute further provides that "[a] vehicle so impounded shall be impounded for 30 days."

Avendano-Ruiz suggested to Wong that the tow was not necessary, as he had a friend who lived nearby with a valid California driver's license who could retrieve the car. Wong rejected this proposal and made arrangements to have Avendano-Ruiz's car towed and stored according to the SPD's "30 Day Storage Program." Vehicle owners whose vehicles are seized pursuant to section 14602.6(a) must be provided an "opportunity for a storage hearing to determine the validity of, or consider any mitigating circumstances attendant to, the storage." Avendano-Ruiz requested such a hearing, which took place the day after the car was towed. In preparation for the hearing, SPD Officer David Ginn reviewed Avendano-Ruiz's arrest and driving records and discovered the following traffic violations: (1) a 2005 conviction for driving without a valid license or insurance; (2) a 2008 conviction for driving without a valid license or insurance; and (3) a 2008 citation for running a red light. At the hearing, Ginn informed Avendano-Ruiz that his car would not be released before the 30-day period expired because he did not have a valid license. Avendano-Ruiz

appealed Ginn's determination to Chief Weaver, who affirmed the decision to continue holding the vehicle. After the 30-day period had passed, Avendano-Ruiz received a release from the SPD allowing him to reclaim his car, after paying a $75.00 release fee and the costs of towing and storage, which totaled $2,060.00. Avendano-Ruiz's friend, who has a valid California driver's license, drove the car from the SPD storage yard.

In July 2015, Avendano-Ruiz filed claims on behalf of a class of similarly situated people against the City of Sebastopol, the SPD, and Chief Weaver in his personal and official capacities, asserting two claims for relief pursuant to 42 U.S.C. § 1983 and California Civil Code section 52.1. First, Avendano-Ruiz contends defendants violated the Fourth and Fourteenth Amendments of the U.S. Constitution and Article I, section 13 of the California Constitution when they towed his car from Bodega Avenue without a warrant. Second, Avendano-Ruiz contends the 30-day warrantless impoundment of his car was also an unreasonable seizure in violation of the U.S. and California constitutions. Defendants moved for summary judgment, contending the initial seizure of the car and 30-day impoundment were reasonable as a matter of law, and that Weaver was entitled to qualified immunity. Weaver was granted qualified immunity, but defendants' motion was otherwise denied. Avendano-Ruiz then moved for summary judgment on his claim that the warrantless 30-day impoundment of his car was an unreasonable seizure in violation of the Fourth Amendment. That motion was denied on the grounds a reasonable fact-finder could determine that the community caretaking exception excused the impoundment of Avendano-Ruiz's car without a warrant.

Now Avendano-Ruiz moves to certify a class defined as "Persons whose vehicles were seized by the Sebastopol Police Department without a warrant and under the purported authority of Cal. Veh. Code § 14602.6, at any time from July 21, 2013, up through the present, where (a) the vehicle's driver was issued a citation for driving without a valid license (Cal. Veh. Code § 12500), (b) the driver had one or more prior § 12500 convictions, and (c) the driver was not driving on a suspended, revoked, or restricted driver's license, driving while intoxicated or arrested or cited for any dangerous driving offense." Avendano-Ruiz also proposes a subclass consisting of "Persons

within the Proposed Class above who reclaimed their vehicles following the impound period."

## III. LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure governs class actions. To obtain class certification, plaintiffs bear the burden of showing they have met each of subsection (a)'s four requirements and at least one requirement from subsection (b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, amended by 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

If all four prerequisites of Rule 23(a) are satisfied, a court must also find that plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Rule 23(b)(3) permits certification if a court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[A] court's class certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (quoting *Wal-Mart*, 564 U.S. at 351); *see also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) ("Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23" (citation and internal quotation marks omitted).). This "rigorous" analysis applies both to Rule 23(a) and Rule 23(b). *See Behrend*, 569 U.S. at 34 (discussing how Congress included "addition[al] . . . procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class

members (e.g., an opportunity to opt out)" and how a court has a "duty to take a 'close look' at whether common questions predominate over individual ones").

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*. If a court concludes that the moving party has met its burden of proof, the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

**IV. DISCUSSION**

**A. Class Definition**

Defendants raise two objections to the class definition as it currently stands. As to the first issue, whether the term "person" in the definition is ambiguous, Avendano-Ruiz is amenable to replacing the term with "registered owners" to make clear that membership in the class is restricted to those persons who have the right of possession when the vehicle in question was impounded. Defendants also object to Avendano-Ruiz's effort to limit the class to those persons who were "not cited for a dangerous driving offense," on the grounds it is unclear which offenses are considered "dangerous" for purposes of ascertaining class membership. Avendano-Ruiz includes as an exhibit to his motion for class certification a chart summary of all potential class members, which shows that individuals have been pulled over for offenses that vary from speeding to driving without functioning brake lights. Defendants contend the proposed class includes individuals who were stopped for what were arguably "dangerous" driving offenses, including failure to stop at a stop sign and driving on the wrong side of the road.

Avendano-Ruiz's suggested solution, which calls upon the Court to review the driving offense summaries and determine which qualify as "dangerous" for the purposes of class membership, is not a reasonable method of resolving this difficulty. Moreover, Avendano-Ruiz's theory of the case is that each Section 14602.6 impound is imposed as a blanket policy, without regard to the nature of the offense that precipitated the seizure of class members' vehicles. If

certification were otherwise appropriate, the better course of action would be simply to strike the phrase "not cited for a dangerous driving offense" from the class definition.

**B. Rule 23(a) requirements**

   **a. Numerosity**

Numerosity is met if the potential class members are so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). Based on arrest reports obtained from the SPD for section 14602.6(a)(1) impounds, Avendano-Ruiz anticipates the number of class members to be at least 81 and more likely in excess of 90. This factor weighs in favor of certification.

   **b. Adequacy**

Adequacy turns on whether the named plaintiff and class counsel have any conflicts of interest with other class members, and whether the representative plaintiff and class counsel can vigorously prosecute the action on behalf of the class. Avendano-Ruiz and his counsel have submitted declarations indicating they have the capacity to carry out the vigorous prosecution of this case. Therefore, Avendano-Ruiz is an adequate representative of the class.

   **c. Commonality**

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" and that the class claims depend on "a common contention . . . of such a nature that it is capable of class wide resolution." *Dukes*, 564 U.S. at 350. Here, although Avendano-Ruiz points to numerous questions that are common to the class, he cannot sustain his burden to show that class-wide litigation will generate common answers. Avendano-Ruiz contends that every class member suffered the same injury, having their vehicle impounded without a warrant, and for the same reasons, being a never-been-licensed driver and having at least one prior section 12500 violation on their records. He also argues that because defendants had the opportunity to obtain a warrant to hold impounded vehicles, every 30-day impound not supported by a warrant violated the Fourth Amendment. That conclusion is incorrect as a matter of law. Although the Ninth Circuit has found warrantless 30-day vehicle impounds to be seizures within the meaning of the Fourth Amendment, *see Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017) (analyzing the 30-day

impound of a lawfully seized vehicle under section 14602.6(a)(1)), the Constitution only prohibits "unreasonable" seizures. Thus, although the 30-day impound may be presumptively unreasonable under the Fourth Amendment without a supporting warrant, the continued seizure of individual class members' vehicles may be justified under an established exception to the warrant requirement.

In *Miranda v. Bonner*, the district court refused to certify a class of individuals who claimed their vehicles were unlawfully seized and impounded for 30 days pursuant to Section 14602.6. *See* No. CV 08-03178 SJO (VBKx), 2012 WL 10972131 (C.D. Cal. Jan. 31, 2012). The court explained, "other than alleging that they have all suffered from a violation of the same statute, Plaintiffs have not demonstrated that a class-wide proceeding will generate common answers." As a result, the answer to the question of whether the defendant's conduct was reasonable was "dependent upon a variety of circumstances and impoundment decisions made for various reasons," including "factors such as the location of the vehicle and the police officers' duty to prevent [the vehicle from creating a hazard to other drivers." *Id.* at *5 (internal quotation marks omitted). In another case addressing nearly identical facts, the district court rejected the plaintiffs' theory "that Defendants' Fourth Amendment justifications for the warrantless thirty-day impoundments, as distinguished from the vehicle's initial seizure and removal from the street, will not turn on the individual circumstances underlying an officer's decision to seize the vehicle and remove it from the street." *Sandoval v. Cty of Sonoma*, No. 11-cv-05817-TEH, 2015 WL 4148261, at *8 (N.D. Cal. July 9, 2015). Although the court determined a 30-day impound was unreasonable as applied to the individual plaintiffs, it found the same could not be said for other putative class members whose vehicles were impounded under different factual circumstances. Because the question of whether prolonged seizure of a vehicle was reasonable under the Fourth Amendment "could be answered differently for these different potential class members," the court concluded plaintiffs had not demonstrated commonality. *Id.* at *8.

Avendano-Ruiz's attempts to distinguish this case from the facts supporting the well-reasoned opinions in *Miranda* and *Sandoval* are unavailing. First, Avendano-Ruiz asserts that

unlike the *Sandoval* defendants, those in this action admit their justification for impounding vehicles for 30 days without a warrant is the same in all cases, without regard to individualized circumstances. A fair reading of Chief Weaver's deposition, which Avendano-Ruiz offers in support of his blanket justification argument, reveals that Weaver believed the legislative purpose behind Section 14602.6 was to deter drivers from driving without a license and to prevent drivers who should not be on the road without a license from having access to their vehicles. In any event, the motivations behind the SPD's impound policy are not determinative of whether the challenged impounds are reasonable under the community caretaking exception to the warrant requirement.

Application of that doctrine "depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005). Here, Avendano-Ruiz contends the tow of his vehicle was not justified under the community caretaking doctrine because it could have been safely left where it was parked on the side of the road, and because he offered to have a friend with a valid California driver's license take possession of it. Nothing in the class definition or the summary chart of potential class members indicates that either of these facts would be generally true of the class. Thus, the question of whether the initial seizure of class members' vehicles was constitutionally valid is a fact-specific inquiry that will generate different answers for different individuals. A second commonality issue arises once a vehicle is taken into SPD custody, where there is no longer any risk of vandalism or theft, and no possibility its location will obstruct normal traffic flow. The class potentially includes unlicensed drivers who, like Avendano-Ruiz, offered to have another legally authorized individual retrieve the impounded vehicle from SPD storage, and unlicensed drivers who attempted to recover their vehicles on their own. Accordingly, the potential risk created by releasing a given vehicle to an unlicensed driver will vary from case to case. Depending on the facts, community caretaking may justify the continued impound of some vehicles but not others.

Section 14602.6 also provides individuals whose vehicles have been impounded the opportunity to attend a storage hearing, after which the vehicle may be released prior to the

1  expiration of 30 days depending on the circumstances. Therefore, even if the initial justification
2  for towing a vehicle could be framed as being the same for all class members, the length of time
3  the vehicle was actually held and the reasonableness of that continued intrusion upon the vehicle
4  owner's possessory interest, will differ from class member to class member. Avendano-Ruiz's
5  efforts to narrow the class definition from that offered in *Sandoval* does not change the variable
6  nature of this core reasonableness inquiry. As articulated in the motion for class certification, the
7  class appears to encompass individuals who requested a storage hearing and were denied early
8  release of their vehicles, individuals who requested a hearing and had their vehicles released in
9  less than 30 days, and individuals who did not request a hearing and did not even claim their
10 vehicle at the end of the 30-day period. As the court explained in *Sandoval*, "[s]omebody who had
11 her car impounded for fifteen days has not suffered the same injury as somebody who had his car
12 impounded for thirty days; this question goes to more than just damages, because whether a
13 particular prolonged seizure is unreasonable under the Fourth Amendment depends on its
14 duration." 2015 WL 4148261, at *9. Because questions regarding the lawfulness of vehicle
15 impounds suffered by class members cannot be resolved in a single stroke, Avendano-Ruiz fails to
16 satisfy the commonality prong of the Rule 23(a) inquiry.

### d. Typicality

"Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interest of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citation and internal quotation marks omitted). "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id*. Here, as in many cases, the commonality and typicality requirements tend to merge. As explained above, the length of each impound claimed by individual class members varies considerably in length from 1 day to the full 30-day period. Some class members never reclaimed their vehicles at all. There is also no evidence that other putative class members attended a storage hearing, or that there were licensed drivers who were available to take

possession of their vehicles at the scene of the traffic stop or at the vehicle storage facility. Therefore, the class as currently constituted embraces individuals whose vehicles were impounded under different factual circumstances and retained for different reasons. As a result, Avendano-Ruiz cannot show his claims are typical of other members of the class.

**C. Rule 23(b) requirements**

Class certification is proper when the proposed class has met all requirements of 23(a) and at least one of the three requirements of Rule 23(b). *See Dukes*, 564 U.S. at 345.

**a. Rule 23(b)(1)**

Rule 23(b)(1) is satisfied if "prosecuting separate actions by or against individual class members would create a risk of A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." There is no evidence that adjudication of Avendano-Ruiz's individual case will preclude other putative class members from bringing separate lawsuits or that there is a serious risk of inconsistent adjudications. Indeed, because the reasonableness of a defendants' prolonged seizure of class members' vehicles is a fact-specific inquiry, the constitutionality of impounding Avendano-Ruiz's car for 30 days does not necessarily dictate the constitutionality of other vehicle impounds. Therefore, the class cannot be certified under Rule 23(b)(1).

**b. Rule 23(b)(2)**

Rule 23(b)(2) is satisfied if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Because Avenando-Ruiz does not request injunctive relief in his operative complaint or discuss such relief in his moving papers, certification under this section of Rule 23(b) is not appropriate.

**c. Rule 23(b)(3)**

A class may be certified under Rule 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The same analytical principles of the commonality requirement in 23(a) apply to predominance, although an even higher standard may apply to 23(b)(3). *Behrend*, 569 U.S. at 34. Relevant factors for this case include "the class members' interests in controlling litigation, the nature of litigation, and the desirability of concentrating the litigation of the claims." *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); Fed. R. Civ. P. 23(b)(3).

As discussed at length with respect to the commonality and typicality factors under Rule 23(a), the fact-intensive nature of a Fourth Amendment prolonged seizure claim indicates that questions specific to individual class members will predominate over any questions common to the class. Because the duration of each seizure and the particular factual circumstances surrounding it bear directly upon the core question of constitutionality, class action is not a superior method of adjudicating the claims of putative class members.

## V. CONCLUSION

For the reasons set forth above, Avendano-Ruiz's motion for class certification is denied.

**IT IS SO ORDERED**.

Dated: July 30, 2018

RICHARD SEEBORG
United States District Judge